CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 15 2010

JOHN F. CORCORAN, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOEL MARTIN KEITH,<br>    Plaintiff, | Civil Action No. 7:09cv00389 |
| v. | **MEMORANDUM OPINION** |
| FEDERAL EXPRESS CORP. LONG TERM<br>DISABILITY PLAN,<br>    Defendant. | By: Samuel G. Wilson<br>United States District Judge |

This is an action by plaintiff, Joel Martin Keith ("Keith"), pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), seeking long-term "Total Disability" benefits from the Federal Express Corporation Long Term Disability Plan (the "Plan").[1] Keith originally brought suit in the Circuit Court for the City of Roanoke, Virginia, but the Plan removed the suit to this court pursuant to 28 U.S.C. § 1441 based upon this court's original, concurrent jurisdiction. See 29 U.S.C. § 1132(e). The Plan has moved for summary judgment as to Keith's claim for future benefits and has counterclaimed for reimbursement of overpayments it alleges Keith received because Keith failed to report Social Security Disability Insurance benefits ("SSDI benefits") which should have offset Plan benefits. The court finds that the Plan is entitled to summary judgment as to Keith's claim for benefits and that the Plan is also entitled to recover its overpayments to Keith, although the precise amount requires further evidence.

I.

FedEx established the Plan to provide for the funding and payment of Long Term Disability Benefits ("LTD benefits") for its "Covered Employees." FedEx, as the "Plan

---

[1] The Plan is an employee welfare benefit plan subject to ERISA.

Administrator," administers the Plan, and Aetna Life Insurance Company ("Aetna Life"), the Plan's "Claims Paying Administrator," pays claims on the Plan's behalf, while the Aetna Appeal Committee (the "Committee"), which has discretionary authority to determine eligibility for disability benefits, makes eligibility determinations for the Plan. Keith was a Covered Employee under the Plan. Accordingly, pursuant to the plan documents, he was entitled to a "Disability Benefit" if he became "Disabled," subject to a reduction in LTD benefits by any amounts received from other income sources like SSDI benefits. A Covered Employee has a "Disability" or is "Disabled" if he has either an Occupational Disability or a Total Disability.

When problems with vertigo and imbalance prevented Keith from performing his job as a "Courier/DOT" for FedEx, he received Short Term Disability Benefits from the Federal Express Corporation Short Term Disability Plan from August 25, 2006, until February 22, 2007. He then transitioned to the Plan for an Occupational Disability from February 23, 2007, until February 22, 2009, as his trouble with vertigo and imbalance continued to prevent him from performing the duties of his job as a Courier/DOT.[2] Pursuant to the plan documents, a Covered Employee may receive LTD benefits up to two years for an Occupational Disability if that employee is unable to perform *his own occupation* due to a physical or mental impairment. To receive benefits for a longer period, a Covered Employee must demonstrate that he has a Total Disability; that is, that he is completely unable (due to a physical impairment) to work in *any occupation* for twenty-five hours per week. The Covered Employee must substantiate that he has a Total Disability by providing the Plan with significant objective findings, which are signs that are "noted on a test or

---

[2] While receiving Plan benefits for his Occupational Disability, Keith filed for and received SSDI benefits payable retroactive to February 2007 for his condition.

2

medical exam and which are considered significant anatomical [or] physiological . . . abnormalities which can be observed" by a practitioner apart from the individual's description of his symptoms.

As the time for Keith's LTD benefits for his Occupational Disability to expire began approaching, the Plan informed Keith that to continue receiving LTD benefits, he must submit "significant objective findings" establishing that he had a Total Disability. In response, Keith submitted additional medical documentation regarding his condition.

On January 14, 2009, Samantha Fariello, a Claim Specialist for Aetna Life, sent Keith a letter. According to the letter, Keith's own physician, Dr. Harter, had sent Aetna Life a return to work report stating: "Yes, Mr. Keith can work at any compensable employment for [a] minimum of twenty-five hours a week . . . . He should be able to work a sedentary job." (12/1/08 Report.) After reviewing Keith's medical files and test results and considering Dr. Harter's conclusion, Aetna Life determined that Keith had not submitted significant objective findings substantiating that he had a Total Disability. Accordingly, Aetna Life denied his request for LTD benefits.

The letter informed Keith that he could file a request to appeal Aetna Life's decision. The appeal review, to be conducted by the Committee, would "consist of a fresh review of [Keith's] claim based on information already existing in [his] file, along with any additional information, records, documents, comments, or other relevant material [submitted] in support of [his] appeal." (01/14/09 Letter.) The letter instructed Keith to submit "medical documentation that clearly states the significant objective findings that substantiate a Total Disability . . . ." (Id.)

Keith submitted an appeal request for the Committee's consideration in March 2009. Marla Schwartz ("Schwartz"), a Senior LTD Claim Analyst for Aetna Life, sent Keith a letter

acknowledging Keith's request for an appeal and informing him that his request would be "carefully reviewed and prepared for presentation" to the Committee. (03/03/09 Letter.) On March 5, 2009, Keith advised Aetna Life that no additional clinical data would be forwarded for the Committtee's consideration. Having received the final data, Aetna Life secured Dr. Cohan, a peer reviewer for Aetna Life, to review the medical documentation provided by Keith.

According to Dr. Cohan, that documentation does not "substantiate the presence of a functional impairment of sufficient severity and/or intensity" as to preclude Keith from working in any occupation for twenty-five hours per week. (03/10/09 Peer Review.) Dr. Cohan reached this conclusion based upon his review of the medical documentation, which revealed that although Keith had undergone "several vestibular system studies . . . no vestibular system abnormaility [was] reported." (Id.) According to Dr. Cohan, there is evidence that Keith has a "unilateral right sensorineural hearing loss" and "postural instability"; however, Keith's "vestibular function" testing is normal as are his neurologic and otologic exam findings. (Id.) In short, Keith's neuro-ophthalmologic evaluation reveals "no specific evidence for a neuron-opthalmologic etiology" for Keith's symptoms and his electroencephalography shows "no significant abnormalities to account for [his] reported symptoms." (Id.)

Dr. Cohan's review then notes that although Dr. Harter retracted his previous opinion regarding Keith's ability to work, Dr. Harter's new conclusion – that Keith would be unable to maintain gainful employment due to episodic labyrinthine dysfunction because he must maintain a supine position for up to three days at a time due to severe vertigo – is unsubstantiated by documentation in Keith's medical records. (Id.) According to Dr. Cohan, what the medical documentation does support is the conclusion that there has been "no documentation at any time .

4

. . to substantiate that [Keith] experiences episodic attacks of severe vertigo which require him to stay in bed for three days at a time" and that Keith's "subjective symptoms have been uniformly determined by diagnostic testing not to relate to significant vestibular dysfunction," and "[t]he episodic nature of [Keith's] subjective symptomatology is not indicative of a functional impairment for work." (Id.)

On April 1, 2009, Schwartz sent Keith an ERISA decision letter on the Committee's behalf. The letter states that the Committee "carefully reviewed [Keith's] request for an appeal," and had decided to uphold Aetna Life's denial of LTD benefits based on the Committee's determination that "there is a lack of significant objective findings to substantiate a claim . . . for [a] Total Disability." (04/01/09 Letter.) The letter further states that before the Committee reached its decision "[e]ach Committee member received and read a copy of the entire administrative record which contains all information submitted with [Keith's] appeal including the case management notes, all medical documentation, [Keith's] appeal letter, the Peer Physician Review . . ., the Plan document, and the YEB."[3] (Id.)

According to the letter, the Committee "noted that [LTD benefits] were paid" to Keith for a two year period for an Occupational Disability "because the medical information submitted provided significant objective findings that [Keith was] unable to perform the duties of [his] job as a Courier/DOT during that timeframe." (Id.) The Committee also took note that Keith has a history of episodic imbalance and dizziness; that Keith's audiogram reveals a "right sensorineural hearing loss"; that Keith's CAT Scan is normal; that Keith underwent "vestibular rehabilitation therapy" with some noted improvement; that Keith's neurological and otology

---

[3] YEB stands for "Your Employee Benefits," a summary description of the Plan.

examinations are within normal limits; that a "posturography" test reveals that Keith's "vestibular functioning" is normal; that Keith's examination by a neurologist revealed normal findings; that an MRI of Keith's brain and an electroencephalography both reveal "no significant abnormalities that would account for the recurrence of [Keith's] symptoms"; that documentation sent to Aetna Life by Dr. Harter reveals that Keith has been responsive to medication; that Dr. Harter submitted a return to work report on which he indicated that Keith could work a minimum of twenty-five hours per week in a sedentary job; and that Dr. Harter's subsequent retraction is not substantiated by "significant objective findings [that] support a functional impairment of sufficient severity and/or intensity" that would preclude Keith from working in any occupation for twenty-five hours per week. (Id.) Accordingly, based on its consideration of all the documentation submitted as well as the peer review conducted by Dr. Cohan, the Committee concluded that Keith had not met his burden of submitting significant objective findings establishing that he had a Total Disability, and accordingly, voted to uphold Aetna Life's denial of LTD benefits.

## II.

The Plan has moved for summary judgment[4] on the ground that the Committee did not abuse its discretion in denying Keith LTD benefits for a Total Disability. The Plan maintains that the standard of review is limited to the question of whether the Committee abused its

---

[4] Generally, on a motion for summary judgment the court considers whether a genuine issue of material fact exists; however, in ERISA actions where the plaintiff is challenging the denial of benefits, summary judgment is "merely the conduit to bring the legal question before the district court and the usual tests of summary judgment . . . do not apply." Farhat v. Hartford Life & Accident Ins. Co., 439 F.Supp.2d 957, 966 (N.D. Cal. 2006) (quoting Bendixen v. Standard Ins. Co., 185 F.3d 939, 942 (9th Cir. 1999)); see also Blackshear v. Reliance Standard Life Ins. Co., 509 F.3d 634, 638 (4th Cir. 2007).

discretion in making its decision. The court finds that because the plan documents grant the Committee discretionary authority to determine eligibility for disability benefits, the appropriate standard of review is for abuse of discretion, and the court agrees that the Committee did not abuse its discretion in denying Keith LTD benefits for a Total Disability.

In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme Court considered the proper standard of review of eligibility benefit determinations by plan administrators or fiduciaries under 29 U.S.C. § 1132(a)(1)(B). According to the Court in Firestone, courts are "to review a denial of plan benefits under a *de novo* standard *unless the plan provides to the contrary*." Metro. Life Ins. Co. v. Glenn, 128 S.Ct. 2343, 2347-48 (2008) (citing Firestone, 489 U.S. at 949-50) (emphasis added). "Where the plan provides to the contrary by granting the administrator or fiduciary *discretionary authority* to determine eligibility for benefits, [t]rust principles make a *deferential standard* of review [for abuse of discretion] appropriate." Id. (emphasis in original).

Under the abuse of discretion standard, a court will uphold a discretionary determination provided it is reasonable, see Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008) (citing Guthrie v. Nat'l Rural Elec. Coop. Assoc. Long-Term Disability Plan, 509 F.3d 644, 650 (4th Cir. 2007)), even if the court would have reached a different conclusion on its own. See, e.g., Smith v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004). "[A] decision is reasonable if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997) (quotation omitted). Substantial evidence is that which "a reasoning mind would accept as sufficient to support a particular conclusion" and which "consists of more than a mere scintilla of evidence

but may be somewhat less than a preponderance." LeFebre v. Westinghouse Elec. Corp., 747 F.3d 197, 208 (4th Cir. 1984) (citation omitted). "[I]n determining the reasonableness" of an administrator's or a fiduciary's discretionary determination, the Fourth Circuit has identified eight nonexclusive factors that a court may consider. See Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335 (4th Cir. 2000). Those factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest[5] it may have.

Booth, 201 F.3d at 342-43. Furthermore, "an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time." Elliott v. Sara Lee Corp., 190 F.3d 601, 608 (4th Cir. 1999) (quoting Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994)).

Here, the court must review the Committee's decision for an abuse of discretion since the

---

[5] In this case, Keith has not argued that there is a conflict of interest. The court notes without deciding, however, that a conflict may exist. FedEx has established a trust fund to fund the Plan, but according to the plan documents, FedEx is obligated to contribute to that trust fund such amounts as are required to pay the benefits and expenses of the Plan. Accordingly, FedEx potentially stands to benefit from having less benefits and expenses being paid out of the trust fund. But cf. Peterson v. Federal Express Corp. Long Term Disability Plan, 2007 WL 1624644 *21 (D. Ariz. 2007) (noting that "[b]enefits trusts have been held to sufficiently dilute structural conflicts of interest in ERISA cases even when the trusts are funded by the administrator and parsimonious claims-granting would help to preserve trust assets"). Nevertheless, any potential conflict FedEx may have is but one factor the court must consider in determining whether the Committee abused its discretion in denying Keith LTD benefits. For the reasons that follow, the court concludes that even if FedEx's funding obligations give rise to a conflict, the Committee did not abuse its discretion in denying Keith LTD benefits for a Total Disability.

plan documents grant the Committee discretionary authority to determine eligibility for benefits. Accordingly, the court will uphold the Committee's determination if the court finds that it is reasonable. The Plan maintains that the Committee's decision is reasonable because it was based on "a deliberate principled reasoning process" and because it is supported by substantial evidence. (The Plan's Supporting Brief, 16.) According to the Plan, the Committee's decision states that the Committee considered the entire record (id. at 16-17) – including the findings of Keith's treating physician, Dr. Harter, and that of the peer review physician, Dr. Cohan – in reaching the conclusion that Keith's submissions to Aetna Life and the Committee contained no significant objective findings of a Total Disability. Keith counters that the Committee abused its discretion because Dr. Harter diagnosed him with "labyrinthine dysfunction" and a "unilateral sensorineural hearing loss," conditions which he claims are characterized by persistent and chronic episodes of vertigo and imbalance that occur at least three to four days per week.

While it is undeniable that the record indicates that Keith suffers from episodes of vertigo and imbalance, the plan documents make it clear that Keith carries the burden of submitting significant objective findings that he is incapable of engaging in any compensable employment for twenty-five hours per week. The Committee reviewed all of the medical documentation submitted by Keith and determined, based on his normal test results and on Dr. Cohan's peer review, that despite Dr. Harter's revised opinion, Keith failed to submit significant objective findings substantiating a Total Disability.

The court notes that "[i]t is not an abuse of discretion for a plan fiduciary to deny disability . . . benefits where conflicting medical reports were presented." Elliott, 190 F.3d at 606 (citing Ellis, 126 F.3d at 234). Here, Dr. Harter initially determined that Keith could work a

sedentary job for a minimum of twenty-five hours per week before he retracted that statement. The Committee appropriately took note that Dr. Harter's retraction was not accompanied by new medical findings or test results, and that Dr. Cohan's review of the medical documentation revealed significant objective findings that support the conclusion that there is "no functional impairment of sufficient severity and/or intensity" as to preclude Keith from working in any occupation for twenty-five hours per week. (03/10/09 Peer Review); see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) (ERISA does not enable courts "to require administrators [to] automatically accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."). The medical documentation constitutes substantial evidence supporting the Committee's decision that there is a lack of significant objective findings to substantiate a claim for a Total Disability, and the court cannot find that the Committee's decision to credit Dr. Cohan's review of the evidence constitutes an abuse of discretion simply because it conflicts with Dr. Harter's evaluation.

Given that the court finds that the Committee's decision was reasonable in light of the medical documentation before it at the time and in light of its reasoned and principled decisionmaking process, the court finds that the Committee did not abuse its discretion in denying Keith LTD benefits for a Total Disability and accordingly grants the Plan's motion for summary judgment on that ground.

### III.

The Plan has also moved for summary judgment on the ground that Keith is obligated to reimburse the Plan in the amount of $40,104.00 for overpayments it made to Keith while he was

receiving LTD benefits for an Occupational Disability. The court finds that the Plan has provided no evidence concerning how it determined the amount of overpayment or the amount of SSDI benefits Keith received. Therefore, to ensure the fair and accurate calculation of overpayments made, the court will reserve judgment on the Plan's counterclaim until the parties have submitted documentation supporting their positions concerning the amount owed.

In support of its motion for summary judgment, the Plan submitted the affidavit of Cindy Glover ("Glover"), a Senior Benefits Specialist employed in the Benefits Department at FedEx's Corporate Headquarters. According to Glover's affidavit, Keith was awarded SSDI benefits "retroactive to February 2007," (Glover Aff., ¶ 12), which means that had he received monthly SSDI payments from February 2007 to February 2009, he would have received reduced monthly benefits under the Plan. Because Keith was awarded retroactive SSDI benefits and no offset was ever taken by the Plan, "there has been an overpayment to Joel Martin Keith . . . in the amount of $40,104.00." (Id., ¶ 14.) Pursuant to the plan documents, when benefits are "paid in excess of the amount of which the Covered Employee is entitled to under the . . . Plan, the Covered Employee is obligated and responsible for reimbursing the . . . Plan the amount of the overpayment." (Id., ¶ 16.) Accordingly, it is the Plan's position that Keith has received a double recovery despite being on notice of the plan documents' reimbursement provisions.

Keith admits that he was awarded SSDI benefits that included a lump sum amount retroactive to February 2007, which created an overpayment of benefits by the Plan to Keith for which the Plan is entitled to reimbursement. He maintains, however, that summary judgment is inappropriate because the Plan "should be entitled to no more than the net sum received by Keith." (Keith Opposing Brief, 3.) Because Keith disputes the amount he owes and because the

11

Plan has not presented any evidence concerning how it determined that it is entitled to the amount of $40,104.00 from Keith, the court reserves judgment on the Plan's counterclaim until the parties have submitted documentation supporting their position concerning the amount owed.

**IV.**

For the reasons stated, the court grants the Plan's motion for summary judgment as to the Plan's denial of benefits and reserves judgment as to the Plan's counterclaim pending submissions from the parties concerning the amount owed.

**ENTER:** This 15th day of April 2010.

UNITED STATES DISTRICT JUDGE