CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 07 2010

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOEL MARTIN KEITH,<br>　　Plaintiff, | Civil Action No. 7:09cv00389 |
| v. | MEMORANDUM OPINION |
| FEDERAL EXPRESS CORP. LONG TERM<br>DISABILITY PLAN,<br>　　Defendant. | By: Samuel G. Wilson<br>United States District Judge |

This is an action by plaintiff, Joel Martin Keith ("Keith"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking "Long-term Total Disability" ("LTD") benefits from the Federal Express Corporation Long Term Disability Plan (the "Plan").[1] The Plan has counterclaimed for benefits it claims to have overpaid Keith as a result of Keith's failure to report his receipt of Social Security Disability Insurance Benefits ("SSDI benefits"), which the Plan was entitled to offset against the amount it paid Keith.[2]

Previously, the court found that Keith was not entitled to future benefits, and that the Plan was entitled to reimbursement, but the court reserved judgment as to the amount of that award pending further submissions by the parties. The Plan now maintains that it is entitled to $41,329.40. Keith has responded that this amount should be decreased by $5,300 to account for the representative's fees Keith incurred in securing SSDI benefits. Although the language of the

---

[1] Keith received benefits from the Federal Express Corporation Short Term Disability Plan from August 25, 2006, through February 22, 2007 and benefits from Federal Express's Long Term Disability Plan from February 23, 2007, through February 22, 2009. All relevant plan provisions are substantially similar, if not identical. For purposes of clarity the two plans will be grouped together and analyzed as one plan under the Federal Express Long Term Disability Plan unless a separate discussion of the plans is necessary.

[2] The Plan is an employee welfare benefit plan subject to ERISA.

Plan is ambiguous, the court finds that Federal Express, the Plan's Administrator (the "Administrator"), did not abuse its discretion in interpreting the Plan documents as entitling the Plan to recover an offset in the amount of $41,329.40 with no allowance for the $5,300 in representative fees the Social Security Administration ("SSA") awarded Keith's representative in securing SSDI benefits. Accordingly, the court awards the Plan $41,329.40.

## I.

Keith received Short Term Disability Benefits from the Federal Express Corporation Short Term Disability Plan from August 25, 2006, through February 22, 2007, based upon his inability to perform his job as a "Courier/DOT" with Federal Express due to vertigo. He then transitioned to the Plan and received long term disability benefits from February 23, 2007, through February 22, 2009.

Section 3.6 of the Plan documents provides that the amount a Covered Employee receives under the Plan

> shall be reduced by the sum of the following benefits to which such Employee is entitled to receive with respect to the same period and condition of Disability for which a Disability Benefit is payable under this Plan even though the Disabled Covered Employee . . . shall have refused or failed to apply for such benefits . . . [including] (7) any primary benefits payable to the Disabled Covered Employee because of age or disability under the Federal Social Security Act . . . .

(Plan § 3.6.) The Plan thus provides that any recovery available from other disability benefit sources offsets the Plan's obligation to a recipient, regardless of whether the recipient actually receives the disability benefit from the other source. The plan's language also gives the Administrator "the absolute right and power to construe and interpret the provisions of the Plan and . . . any ambiguity . . . of the Plan[.]" (Plan § 6.1.)

While receiving Plan benefits, Keith obtained an award of SSDI benefits – including retroactive benefits starting in February 2007 – from the SSA in the amount of $44,274.40. From this amount, the SSA allocated a representative's fee of $5,300. (Def. Ex. B, at 3.) After also withholding insurance premiums from the retroactive award, the SSA informed Keith that his total payment would be $38,878.00. Upon learning that Keith had received past-due SSDI benefits, the Plan informed Keith that, pursuant to Section 5.4 of the Plan, it had overpaid Keith and was now entitled to an offset of $41,329.40[3] for payments it made to Keith from February 2007 through February 22, 2009. Under Section 5.4, "[i]f benefits are paid in excess of the amount to which a Covered Employee is entitled under [the] Plan, it shall be the obligation and responsibility of such Employee to repay to the Plan the amount of the overpayment." (Plan § 5.4.) To date, Keith has not refunded the Plan.

## II.

This court has already determined that Keith must repay the Plan for an overpayment of benefits. Because the amount Keith actually received from the SSA is less than the amount the Plan now claims it is owed, the question before this court now is whether Keith will be required to pay the Plan out-of-pocket in order to fully reimburse the $41,329.40 paid to him. The plan's language, which can plausibly be read to include or exclude recovery costs, is ambiguous in its treatment of Keith's representative fee. The Administrator has, in its discretion, interpreted the ambiguous provision to include recovery costs. In <u>Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan</u>, 201 F.3d 335 (4th Cir. 2000), the Fourth Circuit noted that "the abuse of

---

[3] This amount is comprised of an overpayment of $1,525.40 in Short Term Disability Benefits and an overpayment of $40,104.00 in Long Term Disability Benefits. (Def. Exs. C, F.)

3

discretion standard [of judicial review] . . . is the appropriate one" when "a plan confers discretion on a fiduciary and the fiduciary acts within the scope of conferred discretion." Id. at 342. Therefore, the Administrator's interpretation of the provision will be evaluated to determine if it abused its discretion.

A.

Plans under ERISA are mandated to be "written in a manner calculated to be understood by the average plan participant" and should be interpreted by courts with this drafting requirement in mind. 29 U.S.C. § 1022(a). As the Fourth Circuit has noted, "the plain language of an ERISA plan must be enforced in accordance with 'its literal and natural meaning.'" United McGill Corp. v. Stinnett, 154 F.3d 168, 172 (4th Cir. 1998) (quoting Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997))[4]. Because the Plan's language is unclear with respect to recovery costs, the court cannot merely enforce the provisions plain language.

The language of the Plan states, in brief, that the amount due to a Covered Employee (here, Keith) is to be reduced by the amount of benefits the Covered Employee is entitled to receive from a separate enumerated program (here, SSDI). The language of the Plan, specifically the phrase *"is entitled to receive,"* (Plan § 3.6) (emphasis added), is ambiguous because it gives rise to alternative meanings with regard to the treatment of Keith's recovery costs. Under one interpretation, the Plan's language includes the entire $44,274.40 awarded by the SSA because these were the total benefits that Keith was due under the rules governing SSDI. Conversely, the

---

[4] The failure of the Plan's language to specifically mention recovery costs in Section 3.6 does not, by itself, make the provision ambiguous. See Kress v. Food Emp'rs Labor Relations Ass'n, 391 F.3d 563, 568 (4th Cir. 2004) ("Unqualified plan provisions need not explicitly rule out every possible contingency in order to be deemed unambiguous.") (internal citation omitted).

language in question could be read to include only what Keith was actually paid - that is, his recovery reduced by the $5,300 representative fee.[5] Because the phrase "entitled to receive" could be interpreted to include Keith's total SSDI benefits award or only what he received after recovery costs, the language is ambiguous and the court will defer to the Administrator's interpretation of that ambiguity if it is reasonable.

B.

Since the language of the Plan is ambiguous, the Administrator used its authority to interpret Section 3.6 to mean that Keith was entitled to receive his full SSDI benefits. The court will determine whether this interpretation by the Administrator was reasonable based on an evaluation of reasonableness factors set out by the Fourth Circuit. Because the Administrator's interpretation of Section 3.6 is supported by the language of the Plan and is consistent with other provisions in the Plan, the interpretation is reasonable and the court will defer to the discretion of the Administrator.

When a plan is ambiguous, the court must evaluate whether the Administrator's interpretation of the plan was an abuse of discretion. See Booth, 201 F.3d at 341 ("[T]he abuse of discretion standard . . . is the appropriate one for judicial review of a fiduciary's discretionary decision under ERISA."). When an abuse of discretion standard applies, the court will uphold a reasonable discretionary determination by a plan administrator. See Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 359 (4th Cir. 2008) (citing Guthrie v. Nat'l Rural Elec. Coop. Assoc. Long-Term Disability Plan, 509 F.3d 644, 650 (4th Cir. 2007)).

---

[5] While the $5,300.00 due to Keith's representative would usually be given directly to the representative, in this case it was mistakenly given to Keith who then forwarded the money to his representative. (Keith Aff. 1.)

5

The Fourth Circuit has delineated eight nonexclusive factors for determining the reasonableness of an administrator's or a fiduciary's discretionary determination. See Booth, 201 F.3d at 342-43. These factors include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Id.

The first factor, the language of the plan, strongly favors a finding that the Administrator did not abuse its discretion because the Administrator's interpretation of the language is one of two permissible interpretations based on a natural reading of Section 3.6. The interpretation of language in ERISA plans relies on the "literal and natural meaning" of the language used rather than on a technical or legal understanding. See United McGill Corp., 154 F.3d at 172 (citation and internal quotation omitted). In United McGill Corp. v. Stinnett, the court evaluated language from an ERISA plan similar to the language in the Plan here and found that the language unambiguously allowed the plan to recover without an allowance for recovery costs. 154 F.3d at 170, 173 (finding that a plan which provided it was entitled to reimbursement in "the amount you . . . recover," without mentioning a "deduction for . . . expenses," obligated the plan beneficiary to reimburse the plan for full benefits without deducting a share of the costs required to obtain the reimbursement funds) (citation omitted).

Like the plan documents in United McGill Corp., the plan documents here provide that the Plan must be repaid for any primary benefits which Keith is entitled to receive under the

6

Federal Social Security Act, without mentioning or otherwise providing for a deduction for recovery costs. What Keith is *"entitled to receive"* could mean either his total SSDI benefits, including what will be given to his representative, or it could mean only the amount he will actually own after a portion is allocated to his representative. Either reading of this ambiguous language would be reasonable. Although the language was clear in United McGill Corp. and is ambiguous here, the similarity between the language used in the two instances supports the reasonableness of the Administrator's interpretation here. Without any reason to choose one meaning over the other, the court will defer to the Administrator's interpretation that the Keith was entitled to receive his full SSDI benefits, including the amount ultimately deducted as a representative fee.

The fourth factor, whether the fiduciary's interpretation is consistent with other provisions in the plan, supports the reasonableness of the Administrator's interpretation because if the Administrator had interpreted Section 3.6 to mean that Keith was only entitled to receive his net payment from SSA, then the language of another section of the Plan would be unnecessary. Section 5.5, which deals with reimbursement and subrogation to the Plan after a covered employee recovers damages based on a third parties' intentional or negligent acts, explicitly provides that recovery costs will not be included in the offset amount. But, while the Plan may only recover up to the net recovery under Section 5.5, there is no such express limitation under Section 3.6. The different language of the Plan in Sections 3.6 and 5.5 strengthens the reasonableness of the Administrator's interpretation by showing that when recovery costs are not to be included in the reimbursement amount, the Plan intentionally and explicitly so provides. If recovery costs were withheld under the language of Section 3.6, then

7

much of the language of Section 5.5 would be unnecessary.

Although some of the factors for consideration[6] do weigh against the reasonableness of the Administrator's interpretation, they are not enough to render it unreasonable. The eighth factor, the fiduciary's conflict of interest, applies because the Administrator both funds and interprets the plan. Therefore, this should be considered as "a factor weighing against the reasonableness of its decision." Carden v. Aetna Life Ins. Co., 559 F.3d 256, 261 (4th Cir. 2009). The second factor, the purpose of the plan, may also weigh against the reasonableness of the Administrator's interpretation. The Plan's purpose, from its introductory statement, is "to provide for the funding and payment of long-term disability benefits for its employees[.]" (Plan at I.) When Keith's recovery costs are factored in, the Administrator's interpretation provides Keith with total benefits at a level below what he received from the Plan.

These two factors alone, however, do not outweigh the importance of the plan's language and the overall reasonableness of the Administrator's interpretation. While the result may seem unfortunate for Keith here, "the abuse of discretion standard requires a reviewing court to show enough deference to a primary decision-maker's judgment that the court does not reverse merely because it would have come to a different result in the first instance." Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008).

Weighing the Booth reasonableness factors, the court finds that the Administrator did not abuse its discretion in interpreting Section 3.6 and that the Plan is entitled to recover $41,329.40 with no allowance for Keith's representative fee. While some of the factors weigh against the

---

[6] The court has not been provided with information by either party regarding the Administrator's decision-making process or past instances where Section 3.6 was interpreted. Therefore, the relevant aspects of factors three, four and five were not considered.

8

Administrator's interpretation, these factors fail to show the Administrator abused its discretion. The Administrator's interpretation of the ambiguity in the plan is a fair reading of an unclear term and is supported by comparison to language from another Section of the Plan.[7]

### III.

For the reasons stated above, the court awards the Plan $41,329.40.

**ENTER:** This 7th day of September 2010.

UNITED STATES DISTRICT JUDGE

---

[7] As a final issue, the court notes the footnote in United McGill Corp. v. Stinnett which explicitly did not decide how to treat out-of-pocket expenses in a situation like this one. 154 F.3d at 173 n. ("We leave for another day how to treat situations where the beneficiaries' recovery from the third party after deducting attorney's fees is actually less than the plan's reimbursement claim, thus ostensibly requiring the beneficiary to pay out of her own pocket to meet the plan's claim."). Faced with such a situation here, this court has determined that the result will follow the analysis from previous case law. Without regard to the source of repayment, this court is obliged to examine the Administrator's interpretation under an abuse of discretion standard. See Booth, 201 F.3d at 341. The court's standard of review does not change based on where the offset comes from.